IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-

KIM CORDOVA, MARTIN GARCIA, ADRIANA ESCOBAR, AND CHRISTINE ARELLANO, as UNION TRUSTEES OF THE ROCKY MOUNTAIN UFCW UNIONS & EMPLOYERS HEALTH BENEFIT PLAN,

Plaintiffs,

v.

SEAN HAMMOND AND LEROY WESTMORELAND, as EMPLOYER TRUSTEES OF THE ROCKY MOUNTAIN UFCW UNIONS & EMPLOYERS HEALTH BENEFIT PLAN,

Defendants.

---

**COMPLAINT TO COMPEL ARBITRATION**

---

Plaintiffs, in their capacity as "Union Trustees" of the Rocky Mountain UFCW Unions & Employers Health Benefit Plan (the "Health Plan"), by their undersigned attorney, submit this Complaint to Compel Arbitration against Sean Hammond and Leroy Westmoreland, as "Employer Trustees" of the Health Plan, and allege as follows:

**Jurisdiction and Venue**

1. This action is brought under Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132, and Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186.

2. Plaintiffs seek to compel arbitration of a deadlocked motion concerning the administration and operation of the Health Plan. Plaintiffs seek an order compelling the Employer Trustees to select an arbitrator and proceed with arbitration to decide the deadlocked motion.

3. This Court has jurisdiction over the subject matter and parties to this action pursuant to 29 U.S.C. § 1132(a)(3), which empowers a district court to provide equitable relief to redress violations of ERISA or to enforce the terms of a health plan, and jurisdiction under 28 U.S.C. §186(e), which empowers a court to restrain violations of Section 302.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), because the Health Plan is administered in Colorado, and the breach took place in Colorado.

**Parties**

5. Plaintiffs, Kim Cordova, Martin Garcia, Adriana Escobar, and Christine Arellano, are and at all relevant times have been Union Trustees of the Health Plan.

6. Plaintiffs, as trustees of the Health Fund, are fiduciaries as defined in 29 U.S.C. § 1002(21)(A), who are empowered to bring this action under 29 U.S.C. § 1132(a)(3).

7. Defendants, Sean Hammond and Leroy Westmoreland, are and at all relevant times have been Employer Trustees of the Health Plan and fiduciaries as defined in 29 U.S.C. § 1002(21)(A).

**Health Plan**

8. The Health Plan was established effective May 1, 1965, by United Food and Commercial Workers Local No. 7 ("Local 7"), a labor organization as defined in the LMRA, 29 U.S.C § 152(5), and employee organization as defined in ERISA, 29 U.S.C. § 1002(4), under its

previous name and by signatory employers in the retail food and grocery industry to provide comprehensive health and welfare benefits, including health insurance, disability, and other benefits, for employees covered by collective bargaining agreements between Local 7 and signatory employers.

9. The day-to-day administration of the Health Plan is done by a third-party administrator, Zenith American Solutions, in Arvada, Colorado.

10. The Health Plan is an employee welfare plan within the meaning of ERISA, 29 U.S.C. § 1002(1).

11. The Health Plan is a jointly administered labor-management employee benefit plan governed by Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

12. The Health Plan is governed by the terms of the Rocky Mountain UFCW Unions & Employers Health Benefit Plan Trust Agreement ("Trust Agreement"), as amended and restated effective January 1, 1977, and including subsequent amendments adopted on various dates through May 26, 2020.

13. Pursuant to the Trust Agreement and Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), the Health Plan is governed by a board of trustees consisting of four trustees selected by Local 7 (the Union Trustees) and four trustees selected by signatory employers (the Employer Trustees).

14. The largest signatory employer with the most grocery stores that participates in the Health Plan is King Soopers, a trade name operated by the Dillon Companies, LLC, and a subsidiary of the Kroger Company ("Kroger"), the nation's largest grocer with nearly 2,800 stores

under 28 different names (according to the website *thekrogerco.com*), including King Soopers and City Market, the latter based largely on the western slope of Colorado.

15. The other signatory employers that participate in the Health Plan are Albertsons and Safeway, both of which are owned by New Albertsons L.P.

16. Mr. Hammond, an Employer Trustee, is employed by Kroger as Senior Director, Labor Relations.

17. Mr. Westmoreland, an Employer Trustee, is employed by Kroger as Senior Director, Labor Relations.

**Trust Agreement Provisions Regarding Operation, Administration, and Benefits**

18. The Trust Agreement of the Health Fund, in Section 6.2(a), provides that "the Trustees shall have exclusive authority and responsibility with respect to the custody and management of the Trust," except to the extent such authority has been delegated pursuant to specified provisions of the Agreement.

19. Article VII of the Trust Agreement deals with the operation and administration of the Health Plan. In the following paragraphs, unless otherwise indicated, all references are to articles and sections in the Trust Agreement.

20. Section 7.1 therein provides that the Trustees "shall have authority to and shall be responsible for the operation and administration of the Plan and shall conduct the business and activities of the Plan in accordance with the provisions of this Agreement."

21. Section 7.2 provides that the "Trustees shall have full and complete authority and control over the Plan," unless certain responsibilities are allocated or delegated as specified in the Agreement.

22. Section 7.2(a) provides that the Trustees shall "[f]ormulate and adopt a program of benefits consistent with the purposes of the Plan. Such program of benefits shall be described in an insurance contract, benefit schedules, employee benefit booklet or other form of written instrument."

23. Section 7.3(a) gives the Trustees the power and authority "[t]o amend the program of benefits at any time and from time to time as deemed appropriate by the Trustees . . . . The Trustees shall have full authority to determine all questions of any nature relating to the benefits to be provided based on what in their opinion the Plan can reasonably provide after adequate provision for reserves and costs of administration."

24. Section 7.3(b) provides that the Trustees have the power and authority to determine, *inter alia*, "the nature, type, character and amount of benefits to be provided . . . and the medium (i.e., insurance contract, medical or hospital service contract, self-funding, maintenance of medical and hospital facilities, health maintenance organizations or otherwise) by which such benefits shall be provided."

25. Section 7.3(d) authorizes the Trustees to "select, apply for, accept delivery and act as policyholder under any group insurance policy purchased for the Plan . . . and to cancel any policy or policies of insurance which they have caused to be issued and may purchase in lieu thereof other like insurance from another insurance carrier or carriers. . . . The Trustees may take any action respecting any policy or the insurance provided thereunder which may be necessary or advisable, in their sole judgment . . . ."

26. Section 7.3(r) empowers the Trustees to "enter into any and all contracts and agreements for carrying out the terms of this Plan and for the administration and operation of the Plan and to do all acts as they, in their discretion, may deem necessary or advisable . . . ."

27. Section 7.3(z) empowers the Trustees to "do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper in connection with the Plan, although the power to do such acts is not specifically set forth herein."

**Pharmacy Benefit Manager Dispute**

28. Since at least 2001, for the purpose of providing pharmacy benefits to participants in the Health Fund, the Trustees have utilized a narrow or "custom" pharmacy network confined mainly to the pharmacies of signatory employers, i.e., King Soopers, City Market, Albertsons, and Safeway. As a result of utilizing a custom pharmacy network, Plan participants cannot obtain pharmaceutical drugs covered by the Health Fund at national pharmacy chains such as CVS, Rite Aid, and Walgreens.

29. For the past several years, the Pharmacy Benefit Manager ("PBM") for the Health Plan has been Express Scripts ("ESI").

30. In 2022, the Trustees of the Health Plan issued a request for proposals from prospective PBMs. Several candidates, including ESI and OptumRx ("Optum"), submitted proposals.

31. On August 18, 2022, at a special meeting, the Trustees heard presentations from ESI and Optum about their proposals to serve as PBM of the Health Plan. Optum's proposal was based on the Health Plan using either Optum's "Premium" or "Select" "formulary," i.e., a list of drugs within a therapeutic class on which the PBM offers favorable pricing.

32. At the special meeting of the Trustees on August 18, 2022, the Trustees decided unanimously to accept ESI's proposal to continue operating the custom pharmacy network and to implement certain plan design changes in connection with ESI's proposal, conditioned upon ESI providing an additional invoice credit.

33. On September 28, 2022, at the regular meeting of the Trustees, the Trustees unanimously ratified and approved the continued retention of ESI as the PBM for the Health Plan based upon ESI's provision of the requested invoice credit.

34. In October 2022, Kroger announced that because of a contractual dispute it intended to terminate its relationship with ESI effective January 1, 2023. As a result, the Health Plan's pharmacy network is comprised solely of Safeway and Albertsons pharmacies.

35. On October 14, 2022, Kroger announced that it had reached a definitive agreement with Albertsons to merge their two organizations. If the merger is approved by the Federal Trade Commission, all of the participating employers in the Health Plan—King Soopers, City Market, Albertsons, and Safeway—would be owned and operated by one company, Kroger.

36. On December 7, 2022, the Trustees had a preliminary discussion at their regular meeting about options to deal with Kroger's termination of its contract with ESI. The Employer Trustees proposed moving to Optum based upon (a) its allegedly more favorable economic terms and (b) the Employer Trustees' interest in having the PBM continue to administer the current custom network in Kroger-owned stores, that is, currently King Soopers and City Market. The Union Trustees responded that additional analysis was necessary to properly assess the options for responding to the termination of Kroger's contract with ESI.

37. On January 25, 2023, at a special meeting, the Trustees discussed options for dealing with the disruption caused by Kroger's contract termination of ESI. The Employer Trustees made a motion to replace ESI with Optum's Premium formulary as the PBM for the Health Plan. The Employer Trustees who voted did vote for the motion, but the Kroger Trustees abstained from voting. The Union Trustees voted against the motion, which did not carry. The Union Trustees contend that the vote on the motion did not constitute a proper deadlock because the Employer Trustees had a conflict of interest.

38. At the special meeting on January 25, 2023, the Union Trustees made the following motion, which is the subject of this action ("Union Trustees' Motion"), to alleviate the disruption to Plan participants caused by Kroger's contract termination with ESI: The Health Plan would remain with ESI as the PBM, move from the current custom network to ESI's national network, and add an option for mail order at a higher co-pay for Plan participants.

39. The Union Trustees' Motion, among other advantages, effectively addresses the impact on Plan participants caused by Kroger's dispute with ESI, because the motion allows all Plan participants, including those who do not have reasonable access to custom network pharmacies, to obtain pharmaceutical drugs covered by the Health Plan at national pharmacy chains such as CVS, Rite Aid, and Walgreens or through postal delivery.

40. The Union Trustees' Motion, seeking to broaden pharmacy access under the Health Plan to a national network, is consistent with decisions that the Trustees unanimously or by majority vote have made previously to approve pharmacies outside the custom network when Plan participants' access was unreasonably limited.

41. At the meeting on January 25, 2023, all Union Trustees voted for the Union Trustees' Motion. All Employer Trustees abstained from voting on it. Under the Trust Agreement, this constituted a deadlock.

42. On May 26, 2023, the Union Trustees requested arbitration of the Union Trustees' Motion by letter to counsel for the Employer Trustees.

43. On June 12, 2023, the Employer Trustees, through counsel, refused to arbitrate the Union Trustees' Motion.

**Trust Agreement Requires Arbitration**

44. The Trust Agreement mandates that disputes about the administration or operation of the Health Plan must be decided by binding arbitration. Section 5.7 provides as follows, in pertinent part:

> In the event that Trustees attending a duly called meeting at which there is a quorum present are unable to agree in accordance with the majority voting requirements of section 5.5 hereof upon any matter in connection with the administration or operation of the Plan or Trust . . . a deadlock shall be deemed to exist and the Trustees may then select a neutral person as an impartial arbitrator who is willing to act in the resolution of such deadlock. In the event the Trustees are unable to agree by majority vote upon the selection of an impartial arbitrator within 30 days after such deadlock . . . then any one or more of said Trustees may petition the United States District Court for the district in which the principal office of the Plan is located to have such Court appoint an impartial arbitrator to decide such dispute.

45. The Union Trustees' Motion, which concerns the scope of the pharmacy network and the selection of the PBM to administer and operate the network, is clearly a "matter in connection with the administration or operation of the Plan or Trust" within the meaning of Section 5.7.

46. The Union Trustees' Motion is within the Trustees' power under Section 7.2(a) to "[f]ormulate and adopt a program of benefits consistent with the purposes of the Plan."

47. The Union Trustees' Motion is within the Trustees' power under Section 7.3(b) to determine "the nature, type, character and amount of benefits to be provided . . . and the medium (i.e., insurance contract, medical or hospital service contract, self-funding, maintenance of medical and hospital facilities, health maintenance organizations or otherwise) by which such benefits shall be provided."

**FIRST CLAIM FOR RELIEF**
**ERISA, 29 U.S.C. § 1132(a)(3)(B):**
**Equitable Relief Ordering Employer Trustees to Arbitrate Dispute**

48. Plaintiffs restate and incorporate by this reference the preceding paragraphs of this Complaint as though fully set forth herein.

49. Section 502(a)(3)(B) of ERISA, 29 U.S.C. §1132(a)(3)(B), provides that a fiduciary, such as the Union Trustees, may bring an action to obtain appropriate equitable relief to (i) redress violations of the subchapter or the terms of a plan, or (ii) enforce any provisions of the subchapter or the terms of the plan.

50. By refusing to arbitrate the deadlock of the Union Trustees' Motion, the Employer Trustees are violating the terms of Section 5.7 of the Trust Agreement.

51. The Union Trustees are entitled to judgment that the deadlock about the Union Trustees' Motion is arbitrable and are entitled to an order requiring the Employer Trustees to arbitrate the deadlock.

**SECOND CLAIM FOR RELIEF**
**ERISA, 29 U.S.C. § 1132(a)(3)(B) and LMRA, 29 U.S.C. § 186:**
**Ordering Appointment of an Arbitrator**

52. Section 5.7 of the Trust Agreement provides that if "the Trustees are unable to agree by majority vote upon the selection of an impartial arbitrator within 30 days after such

deadlock . . . then any one or more of said Trustees may petition the United States District Court . . . to have such Court appoint an impartial arbitrator to decide such dispute."

53. Section 5.7 of the Trust Agreement complies with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), which governs joint labor-management trust funds such as the Health Plan and requires that "in the event employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock . . . the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States . . . ."

54. The Employer Trustees, by refusing to appoint an arbitrator and arbitrate the dispute about the deadlock of the Union Trustees' Motion, are violating not only Section 5.7 of the Trust Agreement but also LMRA Section 302(c), 29 U.S.C. §186(c).

55. In addition to the Court's authority under ERISA Section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), to order appropriate equitable relief to enforce the terms of the Health Plan, the Court has authority under LMRA Section 302(e), 29 U.S.C. § 186(e), to restrain violations of Section 302.

56. Under both ERISA Section 502(a)(3)(B) and LMRA Section 302(e), the Union Trustees are entitled to an order appointing an arbitrator as set forth below.

57. When trustees are unable to agree upon an arbitrator in benefit fund deadlocks, a panel of arbitrators with the requisite experience in such deadlocks can be obtained from the Federal Mediation and Conciliation Service (FMCS), from which the parties alternately strike arbitrators until an arbitrator is selected.

58. The Union Trustees request an order from the Court compelling the Employer Trustees (a) to cooperate with the Union Trustees in ordering a panel of arbitrators from the FMCS with the requisite experience in benefit fund deadlocks, (b) to select an arbitrator from such panel, and (c) to proceed with arbitration before the selected arbitrator.

## PRAYER FOR RELIEF

WHEREFORE, the Union Trustees pray for judgment in their favor and against Defendants, the Employer Trustees, providing for the following relief:

A. Ordering that the deadlock on the Union Trustees' Motion is arbitrable and that the Employer Trustees must arbitrate such deadlock.

B. Ordering the Employer Trustees to select an arbitrator from an FMCS panel as specified above and to proceed with arbitration before the selected arbitrator.

C. Ordering the Employer Trustees to pay the reasonable attorney fees and costs incurred by the Union Trustees in this action.

D. Ordering such other legal or equitable relief as the Court deems appropriate.

Respectfully submitted this 7th day of July, 2023.

SPENCER FANE LLP

*s/ Michael J. Belo*
Michael J. Belo
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: (303) 592-8313
Fax: (303) 839-3838
Email: mbelo@spencerfane.com

Attorneys for Plaintiffs